**KENTUCKY FARM BUREAU INSURANCE COMPANY,**
Appellant,

v.

**Jerry GEARHART, Appellee.**

**Jerry GEARHART, Cross–Appellant,**

v.

**KENTUCKY FARM BUREAU INSURANCE COMPANY,**
Cross–Appellee.

Nos. 91–CA–001490–MR, 91–CA–001893–MR and 91–CA–001570–MR.

Court of Appeals of Kentucky.

May 21, 1993.

E.P. Barlow Ropp, Richardson, Barrickman, Dickinson & Ropp, Glasgow, for appellant/cross-appellee.

Charles D. Williams, Williams & Williams, Munfordville, Sharon Bowles Howard, Edmonton, for appellee/cross-appellant.

Before JOHNSON, McDONALD and STUMBO, JJ.

STUMBO, Judge:

These appeals arise from a claim filed by Appellee/Cross–Appellant, Jerry Gearhart (hereinafter "Gearhart"), against Appellant/Cross–Appellee, Kentucky Farm Bureau Insurance Company (hereinafter "Farm Bureau"), alleging that Gearhart was damaged by the attempted cancellation of an automobile liability policy. The case was submitted to a jury, which found in

favor of Gearhart. The Barren Circuit Court entered judgment accordingly, and subsequently amended its order to allow prejudgment interest. Farm Bureau appealed from the judgment (February 25, 1991), and the order denying its motions for judgment notwithstanding verdict and for a new trial (May 20, 1991). Gearhart filed a cross-appeal from a nonexistent order, although we presume that the date of the order as indicated on the notice of appeal (February 15, 1991) was by typographical mistake, and was intended to be the trial court's original judgment (February 25, 1991). Subsequently, Farm Bureau also appealed the trial court's award of prejudgment interest (May 20, 1991), and the denial of its motion to alter, amend, or vacate (July 10, 1991). Since the two appeals and the cross-appeal raise interrelated issues, we have considered and decided them together. After reviewing the record and the law, we affirm in part, and reverse in part.

In early 1988, Gearhart had three (3) separate policies with Farm Bureau covering three (3) different automobiles, as well as a policy covering his home. All of these policies had apparently existed for some time, and had been obtained through Farm Bureau's Glasgow office. Premium due notices were sent to Gearhart for all the policies in early February 1988, including a February 8, 1988, notice regarding a 1982 Isuzu (policy number 3545313), which indicated that coverage expired March 11, 1988. The notices were generated somewhere besides the Glasgow office, which would appear to be the Louisville office of Farm Bureau. However, Gearhart was in the process of selling the Isuzu, upon which he had full coverage since it was financed by a bank, and buying a 1980 Ford van. As a result, on February 18, 1988, Gearhart went to the Glasgow office to obtain coverage on the Ford and to cancel coverage on the Isuzu. We note that the parties argue vociferously about whether Gearhart requested a "transfer of coverage," a term of art indicating that an existing policy would be continued on a different vehicle, or a more simple request to insure the new vehicle and drop the old

vehicle. In the end, it is largely immaterial in view of our disposition of the issues.

In any event, the Glasgow office issued Gearhart a temporary certificate of insurance on the Ford, for purposes of transfering title. The temporary certificate had the same policy number as had the Isuzu (3545313). Gearhart claims such action is contrary to his experience with Farm Bureau, which gives a new policy number for a new vehicle. We also note that Gearhart indicated that he was ready to pay any premium necessary on the Ford, but was advised that no payment was necessary because he had a credit from the premium previously paid on the Isuzu. In fact, since Gearhart sought only liability coverage on the Ford and had previously had full coverage on the Isuzu, the credit would presumably have extended coverage beyond the March 11, 1988, expiration date on the Isuzu.

The paperwork relevant to Gearhart's request was prepared by the Glasgow office and sent to the Louisville office. The paperwork was incomplete or incorrect, and returned to the Glasgow office. The Glasgow office eventually completed or corrected the paperwork, but did not return it to Louisville until March 15, 1988.

Meanwhile, a cancellation notice was sent to Gearhart on February 25, 1988, indicating that coverage ended March 11, 1988. The notice was for the policy number 3545313, but more significantly indicated that it covered a 1982 Isuzu. No premium was paid by Gearhart since he no longer owned the Isuzu. Moreover, since the Glasgow office did not return the completed paperwork to the Louisville office before March 11, 1988, it was not processed because the policy was deemed to have lapsed.

On April 22, 1988, a notice was sent to Gearhart that the policy number 3545313 was no longer in active status, and he could reactivate it. Significantly, this notice also referred to the covered vehicle as a 1982 Isuzu, and noted a copy to the bank which had held the lien on it. Also of interest is testimony presented at trial by an employee at the Glasgow office that coverage on

the van was extended until April 22, 1988, from the reduction in coverage noted above. We note further that other Farm Bureau employees stated that no credit was figured because the policy had lapsed on March 11, 1988.

We are also aware of testimony from Farm Bureau employees that several phone contacts were made with Gearhart's wife in March and April about the lapsed coverage. Such contacts were vehemently denied, and evidence was introduced tending to show that Gearhart's wife was not available to receive phone calls at the time in question.

Eventually, on October 5, 1988, the Ford was involved in an accident. Farm Bureau refused to pay or defend the claim. Gearhart settled the claim, and brought suit to recover therefor.

As a final note, coverage was obtained on the Ford on October 27, 1988. A new policy number was issued. Any additional facts necessary to our analysis will be set forth in the context of our discussion of the issues.

■ Although Gearhart vigorously resists the notion, the single, dispositive issue in this appeal is whether Farm Bureau properly cancelled the policy. Cancellation of automobile liability insurance policies is governed by KRS 304.20–040. It provides that " '[p]olicy' means an automobile liability insurance policy ... under which the insured vehicles therein designated" are of certain types. KRS 304.20–040(1)(a). "No notice of cancellation of a policy ... shall be effective unless mailed ... at least fourteen (14) days" prior to cancellation. KRS 304.20–040(3). It takes no great leap of logic to conclude that the cancellation notice of a policy must include a proper designation of the vehicle covered. In fact, such would appear to be the plain meaning of the statute, which we must uphold. *See Bailey v. Reeves,* Ky., 662 S.W.2d 832, 834 (1984). Moreover, requiring proper designation of the covered vehicle will serve to alert the ordinary and reasonable person that coverage is about to expire, unlike the mere indication of a policy number, which the vast majority of people simply do not know. As a result, the legislature must

have intended to require proper designation of the covered vehicle for cancellation to be effective. *See United Services Automobile Association v. State Farm Mutual Automobile Insurance Co.,* Ky.App., 784 S.W.2d 786, 787–88 (1990), which noted that "[t]he cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect."

■ In this case, there is no question that the notice of cancellation sent to Gearhart did not properly designate the Ford. As a result, the notice was inadequate as a matter of law. Consequently, the issue regarding cancellation need not have been submitted to the jury. Since the judgment entered was correct, we affirm it. *See Haddad v. Louisville Gas & Electric Company,* Ky., 449 S.W.2d 916, 919 (1970).

As a result of our disposition of the case, Farm Bureau's argument that it was entitled to a directed verdict because it properly cancelled the policy is obviously incorrect. Moreover, we need not address Farm Bureau's arguments relating to instructions, closing argument, and the verdict being the result of passion or prejudice, since they are now moot.

The subject of Farm Bureau's second appeal is the trial court's decision to allow prejudgment interest. The original judgment in this case was entered on February 25, 1991, and did not mention prejudgment interest. Farm Bureau then filed and served motions for judgment notwithstanding verdict and for a new trial on March 7, 1991, which was the tenth day after the judgment was entered. On March 16, 1991, Gearhart's motion for the award of interest was filed, and we note that it was apparently served on March 14, 1991, which was a Thursday. The trial court ruled upon the motions on May 20, 1991, overruling those made by Farm Bureau and sustaining Gearhart's motion. Thereafter, on May 30, 1991, Farm Bureau filed and served a motion to alter, amend, or vacate that portion of the May 20, 1991, order relating to prejudgment, which was overruled on July 10, 1991.

A motion to alter or amend a judgment, which is the relief Gearhart sought, "shall be served not later than 10 days after entry of the final judgment." CR 59.05. It is clear that Gearhart's motion, on its face, was untimely. *Coca–Cola Bottling Works (Thomas), Inc. v. Hazard Coca–Cola Bottling Works, Inc.,* Ky., 450 S.W.2d 515, 519 (1970). In an effort to avoid the result which is thus mandated, Gearhart argues two points. The first is that the trial court "reserved" its decision on the issue prior to trial. The second is that Farm Bureau's motion for a new trial or judgment notwithstanding verdict made the original judgment interlocutory, and thus subject to amendment.

■ We will assume that the trial court intended to make its decision regarding interest only after the jury had returned a verdict in favor of Gearhart when it "reserved" its decision on the issue. Even if such is true, it was incumbent upon Gearhart to timely move under CR 59.05 to alter or amend the judgment when it was issued and prejudgment interest was not awarded. *Whittenberg Engineering & Construction Company v. Liberty Mutual Insurance Company,* Ky., 390 S.W.2d 877, 884 (1965). As in *Whittenberg Engineering,* there is no basis for the other avenues of relief (i.e., CR 60.01 or CR 60.02) potentially available to Gearhart. Consequently, regardless of the reason for the omission, Gearhart had ten (10) days from entry of the February 25, 1991, judgment to serve a motion requesting the judgment be altered or amended to include prejudgment interest. *Id.* Having failed to do so, Gearhart's motion is time barred, even if the trial court did "reserve" the question.

■ As for Gearhart's second point, we also find it unpersuasive. Gearhart relies upon *State Personnel Board v. Heck,* Ky. App., 725 S.W.2d 13, 18 (1986), wherein the Court stated that "[a] motion pursuant to CR 59, however, converts a final judgment to an interlocutory judgment. CR 73.-02(1)(e)." Taken out of context, as Gearhart has done, the quoted portion from *Heck* would appear to support Gearhart's argument. However, the question in *Heck* was whether a *timely* CR 59.05 motion preserved an issue for appeal by bringing it to the trial court's attention before appeal, which is not the issue herein. Moreover, as the reference to CR 73.02(1)(e) establishes, a judgment affected by a CR 59.05 motion is made interlocutory only for purposes of tolling the time for filing a notice of appeal. It does not authorize a general attack upon, or revision of, the judgment at issue. *See Whittenberg Engineering,* 390 S.W.2d, at 884; *see also Rodgers v. Berry,* Ky., 346 S.W.2d 43, 44 (1961), wherein it was held that a second motion under CR 59.05 directed to an order overruling a previous motion under CR 59.02 or CR 59.05 would not toll the time for taking an appeal, where the second motion was served more than ten (10) days after entry of judgment. Instead, a trial court loses control of a judgment ten (10) days after the entry of the judgment, except to the extent an authorized, timely motion under CR 59 is made. *See Ohio River Pipeline Corporation v. Landrum,* Ky.App., 580 S.W.2d 713, 718 (1979). Thus, the trial court lost control of the judgment entered in this case on March 7, 1991, except to the extent of Farm Bureau's motion for a new trial or judgment notwithstanding verdict. As a result, Gearhart's motion for interest was untimely, and should not have been considered, when it was served on March 14, 1991. Therefore, we must reverse the award of prejudgment interest.

■ On cross-appeal, Gearhart argues that he was entitled to a punitive damages instruction and attorney's fees because Farm Bureau owed him a greater standard of care, since it charged him a yearly membership fee of $25. Since Gearhart has failed to cite any authority for these arguments, we are not convinced he should prevail. Moreover, under the facts of this case, we do not see any reason to hold Farm Bureau to such a higher standard of care, nor any justification for punitive damages or attorney's fees.

For the reasons set forth above, we affirm the judgment of the Barren Circuit Court on cross-appeal (91–CA–001570–MR), and affirm on the initial direct appeal (91–CA–001490–MR), but reverse on the second direct appeal (91–CA–001893–MR). This matter is remanded for entry of appropriate orders consistent with this opinion.

All concur.